## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TS HOLDINGS, INC. and
RONALD THOMAS,

           Plaintiffs,

v.                                         Case No. 09-cv-13632
                                         Hon. Mark A. Goldsmith

BARRY SCHWAB,

           Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 49), GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 63), GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SANCTIONS (DKT. 67), DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. 70), AND GRANTING PLAINTIFF'S ATTORNEY'S MOTION TO WITHDRAW (DKT. 78)

### I.  Introduction

The subject matter of this case is U.S. Patent No. 7,418,474 B2, entitled "Secure Identification System" ("the '474 patent").  Defendant Barry Schwab is the sole named inventor on the patent.  Plaintiff Ronald Thomas has brought a claim for inventorship, alleging that he is a co-inventor of the patented invention.   A second Plaintiff, TS Holdings, Inc., has been voluntarily dismissed from this case (Dkt. 26).  The complaint also alleges breach of fiduciary duty and tortious interference with business relations in connection with Schwab's failure to assign to Thomas the disputed patent.  Schwab has countersued for $135,000 allegedly owed to him for unpaid work performed for Thomas.   Before the Court are Schwab's motion for summary judgment on all claims (Dkt. 49), Thomas's motion for partial summary judgment on the matter of the $135,000 (Dkt. 63), and cross-motions for sanctions pursuant to Federal Rule of

Civil Procedure 11 (Dkts. 67 and 70).  The Court held a hearing on these motions August 11, 2011.  Also before the Court is Nabih H. Ayad & Associates, P.C.'s motion to withdraw as Plaintiff's counsel (Dkt. 78), for which a hearing was held on October 12, 2011.

## II. Background

It is undisputed that Thomas and Schwab maintained a business relationship for approximately fifteen years.  In 1993, the parties entered into a consulting agreement in connection with Thomas's idea for a video product to be used in automobile marketing.  Thomas agreed to pay Schwab $5,000 for a one-and-a-half week term in which Schwab would act as a consultant and advise Thomas on how to build the system.  Consulting Agreement (Dkt. 63-3).  Schwab designed the system, hired one or more computer programmers, and had the system built.  Schwab testified that the parties had another, oral contract wherein Thomas would continue to pay Schwab $5,000 per month for as long as Schwab provided consulting services to Thomas.  Schwab Aff. ¶ 17 (Dkt. 50-4); Schwab Dep. at 39-40, 47-49, 141 (Dkt. 63-2).  Schwab continued to consult and was paid by Thomas until 1997.  Id.  Schwab contends that the oral agreement terminated in 2008.

In 1996, Thomas formed TS Holdings, Inc., with Thomas owning 90% and Schwab owning 10%.  Schwab assigned four U.S. patent applications to Thomas for the sum of one dollar, with the understanding that those patents applications were to become the assets of TS Holdings, Inc.  Schwab Dep. at 103, 110-111; Assignment (Dkt. 66-5).  Two of those applications eventually became patents: Patent App. No. 08/393,493 issued as Patent No. 6,353,699 B1, and Patent App. No. 08/453,393 issued as Patent No. 5,973,731.  The other two applications were abandoned.

Schwab testified that he did not receive consulting payments from Thomas after 1997, but he continued to consult for Thomas sporadically because he believed there was a possibility that Thomas would eventually compensate him, and because of his ten percent interest in TS Holdings, Inc.  Schwab Dep. at 105, 115, 141-142.  He testified that his relationship with Thomas was less frequent "because I was becoming more pessimistic about his prospects of success and my prospects to ever get any benefit out of it."  Id. at 116.  Schwab testified that Thomas agreed to grant him a ten percent interest in an entity called Video Exchange Industries, which was organized to utilize the patent portfolio belonging to TS Holdings, Inc.  Schwab Aff. ¶ 16.  Schwab claims he never received any interest in this company, and Thomas testified that he does not know if he ever tendered shares to Schwab.  Id.; Thomas Dep. at 28 (Dkt. 63-4).

In 2008, Thomas contacted Frederick Fehlauer for the purpose of being the exclusive licensing and sales agent for TS Holdings, Inc.  Fehlauer Aff. ¶ 4 (Dkt. 63-3).  Fehlauer testified that Thomas represented to him that TS Holdings, Inc. was the assignee of the rights to a number of patents, including the '474 patent.  Id. ¶ 5.  Each one of these patents lists Schwab as the sole inventor.  Fehlauer discovered that the '474 patent was not assigned to Thomas or TS Holdings, Inc. and he told Thomas that he could not represent Thomas until his firm actually controlled all the necessary patents.  Id. ¶¶ 8-9.

Thomas contacted Schwab and asked that he execute an assignment for the '474 patent. In October 2008, Schwab received two assignments from Thomas's lawyers for Schwab to sign and execute.  The assignments contained a blank space in place of the assignee.  Schwab testified that he became suspicious because "[i]t's equivalent to asking me to sign a blank check." Schwab Dep. at 153.  Schwab testified that he then began researching Thomas's companies and discovered that TS Holdings, Inc. had been dissolved in 1999.  Schwab further discovered that

3

Thomas had created a separate entity, T.S. Holdings, L.L.C., in 2004, which Schwab claims was created for the purpose of defrauding him of his patent rights. Schwab testified that, in late 2008, Thomas created a new entity called TS Holdings, Inc., which was not the same company that he had been a part of ten years earlier, and that Thomas sent him an unsolicited stock certificate for 1,000 shares in this new company to induce him to assign the '474 patent. Schwab Aff. ¶ 42; TS Holdings, Inc. Stock Certificate (Dkt. 53-1).[1] Schwab refused to assign the '474 patent to Thomas or to TS Holdings, Inc.

Thomas filed suit against Schwab, claiming that he is a co-inventor of the invention protected by the '474 patent. When asked what the field of invention for which Thomas is claiming co-inventorship was, he replied, "The idea." Thomas Dep. at 57. Schwab denies that Thomas had any inventive contribution to the '474 patent. Schwab avers that Thomas's "idea" was only a marketing concept, but that the entire patentable invention was invented by Schwab. Def.'s Response ¶ 15 (Dkt. 66). The '474 patent is a continuation-in-part of multiple prior applications, including applications that were assigned to Thomas in 1996 and other nonassigned applications. '474 Patent (Dkt. 52-1).

Thomas's complaint also includes a claim for tortious interference with business relations in connection with his failed business deal with Fehlauer, discussed above, and two other unsuccessful deals, one with Associates Commercial Credit involving a product called TruckScan, and one with Freightliner. Thomas's Resp. at 19-20 (Dkt. 64-1). Thomas claims that "[a]s a consequence of Schwab's failure to abide by his fiduciary duty to assign, it was

---

[1] Thomas stated that he believes the stock sent to Schwab is the only stock that has ever been issued for the company. Thomas Dep. at 97 (Dkt. 63-4).

apparent that TS HOLDINGS, INC. could not enter into the requisite business arraignment.  As a consequence thereof the Plaintiffs lost a business opportunity."  Compl. ¶ 24.

Schwab counterclaimed for $135,000, which he alleges is owed to him under the terms of the oral consulting agreement.  Schwab claims that Thomas owes him for work completed between 1995 and 1998 for which he was not paid, and for services performed from 1998 through 2008.  Schwab Dep. at 145-148.

### III. Discussion

#### a.  Legal Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(c).  In evaluating a motion for summary judgment,

> [t]he burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted). In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 373-374 (6th Cir. 2009).

#### b.  Inventorship of the '474 Patent

Count I of the complaint alleges that Thomas "is entitled to be named as a co-inventor for his contribution to the conception and the reduction to practice."   Compl. ¶ 14 (Dkt. 1).  Schwab's motion argues that summary judgment is proper with respect to Count I on the ground

that Thomas has not raised a genuine issue as to the patent's inventorship.  For the reasons that follow, the Court agrees.  Thomas has not brought evidence challenging the presumed validity of Schwab's status as sole inventor of the '474 patent.

An issued patent has a presumption of validity.  35 U.S.C. § 282.  Because of this presumption, there is a corresponding presumption "that the named inventors on a patent are the true and only inventors."  Trovan, Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1301 (Fed. Cir. 2002).  Inventorship is a question of law.  Id.  Thomas, alleging co-inventorship, has the burden to prove his inventive contribution by clear and convincing evidence.  Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1461 (Fed. Cir. 1998).

To be a valid inventor, one must have conceived of the invention, "complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.  Burroughs Wellcome Co. v. Barr Laboratories, Inc., 40 F.3d 1223, 1227-1228 (Fed. Cir. 1994).  Conception requires that the inventor actually reduce the invention to practice; this means that the claimed invention must actually work for its intended purpose.  Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986).  "[O]ne who merely suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a joint inventor."  Nartron Corp. v. Schukra U.S.A. Inc., 558 F.3d 1352, 1359 (Fed. Cir. 2009) (internal quotations omitted).  The Federal Circuit has explained:

> [T]he test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention; the inventor must prove his conception by corroborating evidence, preferably by showing a contemporaneous disclosure.  An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue.  See Fiers v. Revel, 984 F.2d 1164, 1169 (Fed. Cir. 1993); Amgen, Inc. v. Chugai

> Pharmaceutical Co., 927 F.2d 1200, 1206 (Fed. Cir. 1991) (no conception of
> chemical compound based solely on its biological activity). The conception
> analysis necessarily turns on the inventor's ability to describe his invention with
> particularity. Until he can do so, he cannot prove possession of the complete
> mental picture of the invention. These rules ensure that patent rights attach only
> when an idea is so far developed that the inventor can point to a definite,
> particular invention.

Burroughs, 40 F.3d at 1228.

Applying this test to the instant case, the Court concludes that there is no evidence in the record to support the claim that Thomas had conceived of the invention protected by any of Schwab's patents, including the '474 patent. While Thomas's briefs make a number of assertions, including that he, and not Schwab, is the true sole inventor, he presents no evidence of Thomas's alleged inventive activity. Instead, Thomas confuses the distinction between patent ownership and patent inventorship, and between one patent and another, by attempting to paint Schwab's assignment of certain patent applications (of which the patent at issue is not one) as an admission that Thomas is the "true creator" of the '474 patent. Thomas's Resp. at 2. However, as discussed below, Thomas's evidence and arguments do not implicate Schwab's status as sole inventor. Accordingly, Thomas's inventorship claim is subject to dismissal.

Thomas's argument appears to center on a narrative and evidence that establish that Schwab acted as Thomas's business consultant. Thomas's Resp. at 11-13. Thomas's argument, as understood by the Court, is that Schwab's contribution was insubstantial, while it was Thomas who "conceived of the idea and then hired Defendant to reduce Plaintiff's idea to practice." Id. at 13. To support this argument, Thomas relies on Hobbs v. United States Atomic Energy Comm'n, 451 F.2d 849 (5th Cir. 1971) for the proposition that "[w]here a person has conceived an invention and employs other persons to assist him in carrying out that principle . . . such

7

suggested improvements are in general to be regarded as the property of the party who discovered the original improved principle."

Hobbs is inapposite to the instant case. In Hobbs, the defendants unsuccessfully argued for the invalidity of a patent on the grounds that technical employees of a named inventor contributed to the invention, and therefore the named inventor was not the sole inventor. The Fifth Circuit concluded that suggestions from employees are not sufficient to deprive the listed inventor of his sole inventorship. Id. at 865. Thus, in Hobbs, the sole named inventor of a patent successfully retained his status as sole inventor on the grounds that employee suggestions do not establish the employee as a co-inventor. By contrast, in our case, the complaint filed by Thomas does not challenge the inventor status of Schwab; Thomas seeks only to win co-inventorship status for himself. Nothing in Hobbs supports Thomas's co-inventorship claim. To the extent Thomas, contrary to his complaint, now seeks to challenge Schwab's inventorship status by characterizing Schwab's actions as akin to employee suggestions, his argument is invalid, given that Schwab, like the plaintiff in Hobbs and unlike the defendants-employees in that case, is the named inventor.

Thomas further argues that it is undisputed that he "financed the reduction to practice; Defendant merely served as the technical expert." Thomas's Counterstatement of Material Facts ¶ 15 (Dkt. 64-1). However, while reduction to practice is a legal requirement of invention, there is no legal basis for Thomas's assertion that financing such reduction to practice equates to invention itself. See Hybritech, 802 F.2d at 1376 (inventor must actually reduce the invention to practice).

Finally, Thomas asserts that "Schwab readily admits that Plaintiff was the inventor of

Patent '699." Plaintiff's Counterstatement of Material Facts ¶ 15 (Dkt. 64-1). As support,

Thomas cites the following passage from Schwab's deposition testimony:

> Q Okay. Now, would you agree with me that Mr. Thomas is the inventor of this Video Trader idea?
> ...
> A: He is the -- I hesitate to use the word "inventor," because that implies patentability, but he was the one who came up with the idea of making the video version of the Auto Trader paper publication.
> Q: Okay. And then through your consultation agreement with him, you designed a way to put that idea into motion. Correct?
> A: I designed a system for making master tapes. It's not a system for doing video programs, it's a system for making master tapes on clips.
> Q: And that was a mechanism for putting Mr. Thomas's idea into motion. Correct?
> A: It would have had many other possible applications, but it would have been what I would have recommended that he do to create his master tapes for his publication.
> Q: Let me ask you this. You created this system because of Mr. Thomas's idea. Is that right?
> A: I created the system because Mr. Thomas's concept was impractical, unworkable and too expensive to ever be economically feasible.
> Q: But if Mr. Thomas had never contacted you with this idea, then you would have conceivably never created this system. Correct?
> …
> A: That's entirely speculative. I don't know what I would have done or what other clients I might have taken in that time period.
> Q: Okay. This is what I'm getting at. You designed this system. Alright? I'm not saying that you didn't design this system. I'm asking you; you designed this system because Mr. Thomas approached you with an idea for the Video Trader. Correct?
> A: I worked on that at that point in time because I saw that Mr. Thomas had an application for that system, for that kind of system.
> ...
> Q: And he paid you to perform a service. Correct?
> A: To advise him on how to go about this.
> Q: And how did you advise him to go about that?
> A: I advised him that his method would not work, it wasn't practical, and set about looking to see if it were possible to do a system that fulfilled his needs.
> Q: Alright. And the system that you came up with to fulfill his needs, based on the consultation agreement between you and Mr. Thomas, was the system for the master tapes that you just discussed. Right?

A: Yes, at that point in time.

Schwab Dep. at 25-27.  Schwab's testimony does not support Thomas's claim that Schwab acknowledged Thomas as the inventor of the '699 patent.  To the contrary, Schwab explicitly denied that Thomas was the inventor, as is evident from another part of Schwab's deposition:

> Q Didn't you assign these patents to Mr. Thomas because he was the true inventor of these patents?
> A: No.
> Q: No?
> A: No.

Id. at 111.

More importantly, the '699 patent is not at issue in this case.  The Court concludes that the evidence that Schwab assigned certain patent applications to TS Holdings, Inc. (including the application that issued as the '699 patent) does not implicate Schwab's inventorship in the '474 patent, which is the subject matter of this lawsuit.  The '474 patent is a continuation-in-part of multiple prior applications, only some of which were assigned applications.  '474 Patent (Dkt. 52-1).  Schwab testified that only the explicitly enumerated applications were meant to be assigned, and that there was never any intent to assign continuations-in-part, particularly the applications that issued as the '474 patent.  Schwab Aff. ¶ 26, 33 (Dkt. 61-2).  Thomas has not rebutted Schwab's testimony.  Indeed, the fact that Thomas's briefs repeatedly reference the '699 patent and emphasize Schwab's assignment of the parent applications indicates a fundamental misunderstanding of the nature of a continuation-in-part application, as well as the distinction between patent inventorship and patent ownership.

A continuation-in-part application is an application that includes new patentable material not disclosed in earlier applications.  Manual of Patent Examining Procedure § 201.08 (7th ed. Rev. 1 Feb. 2000); Univ. of W. Virginia Bd. of Trustees v. VanVoorhies, 278 F.3d 1288, 1297

10

(Fed. Cir. 2002).   Ownership of a parent application guaranties neither inventorship nor ownership of subsequent continuations-in-part, and an assignment that enumerates specific applications does not include continuations-in-part of those enumerated applications unless explicitly provided for in the assignment.   See Euclid Chem. Co. v. Vector Corrosion Techs., Inc., 561 F.3d 1340, 1343-1344 (Fed. Cir. 2009) (examining ambiguity in an assignment that included "any and all divisional applications, continuations, and continuations in part" of a set of patent applications).[2]   Here, there is no language in the parties' assignment that suggests that any continuation-in-parts were to be assigned.   Moreover, the entire concept of patent assignment is predicated on the distinction between inventorship and ownership: if someone is the inventor of a patent, assignment is unnecessary.   Thus, Thomas's attempt to show that Schwab admits that Thomas is the "true inventor" based on evidence that he assigned applications fails.

Because Thomas has not produced evidence showing that he contributed to the invention and has not rebutted the presumption of Schwab's status as sole inventor, summary judgment in favor of Schwab on the issue of inventorship is proper.[3]

### c. Tortious Interference with a Business Relationship

---

[2] The Federal Patent Act requires that all assignments of patent rights be in writing.   35 U.S.C. § 261.

[3] In the statement of facts in Plaintiff's response, he asks for leave to file a counter-affidavit under Rule 56(d).   Pl.'s Resp. at 5-7.   The rule grants discretion to a court to defer consideration of a summary judgment motion to conduct discovery or obtain affidavits.   Egerer v Woodland Realty, Inc., 556 F.3d 415, 425-426 (6th Cir. 2009).   However, the rule requires the nonmoving party to submit a declaration or affidavit explaining the need for further discovery or the unavailablity of information.   Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000).   Here, Plaintiff has failed to file an affidavit or declaration.   Further, although Plaintiff's response was filed on May 5, 2011, Plaintiff has not sought to file a counter-affidavit in the intervening seven months and has not set forth any grounds why a proper request for leave could not have been filed by now.   Accordingly, the Court decides this motion on the record before it.

"To establish a claim for tortious interference under Michigan law, a plaintiff must show: (1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." Grand Rapids Plastics, Inc. v. Lakian, 188 F.3d 401 (6th Cir. 1999) (citing Michigan Podiatric Med. Ass'n v. National Foot Care Program, Inc., 438 N.W.2d 349, 354 (Mich. Ct. App. 1989)). "The expectancy must be a reasonable likelihood or probability, not mere wishful thinking." Id. (quoting Trepel v. Pontiac Osteopathic Hosp., 354 N.W.2d 341, 348 (Mich Ct. App. 1984)). A plaintiff must show that a defendant acted intentionally and improperly or without justification in law. Bonelli v. Volkswagen of Am., Inc., 421 N.W.2d 213, 221 (Mich. Ct. App. 1988). A defendant whose acts are motivated by a legitimate business reason does not commit tortious interference. BPS Clinical Labs. v. Blue Cross & Blue Shield of Michigan, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996) (citing Michigan Podiatric Med. Ass'n, 438 N.W.2d at 355).

Thomas alleges that "[a]s a consequence of Schwab's failure to abide by his fiduciary duty to assign, it was apparent that TS Holdings, Inc. could not enter into the requisite business arrangement. As a consequence thereof, the Plaintiff lost a business opportunity." (Compl. ¶ 23). Thomas asserts that he had three separate and distinct business opportunities that Schwab interfered with: (i) the Associates Commercial Credit opportunity, (ii) the Freightliner opportunity, and (iii) the Fehlauer negotiation. However, while Thomas has claimed to be a co-inventor of the patent (a claim the Court has rejected), Thomas has not advanced any theory as to why it was Schwab's fiduciary duty to assign the '474 patent to him or TS Holdings. Thus, Thomas has not met his burden to prove that Schwab had a duty to assign the patent. Further, the Court finds that the reason Schwab has given for refusing to assign the patent – that he

distrusted Thomas and that he was suspicious that the assignment was not going to the entity with which he was affiliated – is plausible.  Accordingly, Schwab's refusal to assign Thomas the '474 patent was justified by law, and as such, the refusal cannot be the basis for a claim of tortious interference.    Therefore, summary judgment is proper as to Thomas's tortious interference claim.

Additionally, the Court acknowledges Schwab's argument relating to the statute of limitations because it is relevant to Schwab's motion for Rule 11 sanctions, discussed below. Schwab argues that two of the business opportunities that Thomas bases his claim on – the TruckScan and Freightliner deals – occurred in 1996 and 1997 and therefore any tortious interference claims relating to them are barred by a three-year statute of limitations.  See James v. Logee, 388 N.W.2d 294, 295-296 (Mich. Ct. App. 1986) (three-year statute of limitations applies to tortious interference actions).    Thomas's response is that Schwab failed to cite evidentiary support for his assertion that these events actually transpired in 1996 and 1997; Thomas has not submitted his own evidence that the events transpired within the statute of limitations.  The Court notes that Schwab's affidavit filed with his motion for Rule 11 sanctions (Dkt. 67-1) lays out these very dates, so the Court does have a record on which to determine the factual question of when these events took place.  As Thomas has not put forth evidence that these events were within the statute of limitations, the Court finds that it is uncontested that the events were outside the statute of limitations.  Accordingly, summary judgment is also granted as to these events on the basis of the statute of limitations.

### d.  Breach of Fiduciary Duty

In addition to the claims regarding inventorship of the '474 patent and tortious interference, the complaint contains a claim for breach of fiduciary duty.  Count II, Compl. ¶ 16-

13

19.  Schwab argues that because the alleged breach of fiduciary was alleged only as to Plaintiff TS Holdings, Inc., which was voluntarily dismissed (Dkt. 26), this count must be dismissed. Thomas, the only remaining Plaintiff in this case, does not contest this.  Accordingly, because the entity at which the claim is directed is no longer a party to the case, Count II of the complaint is subject to dismissal.

### e.  Plaintiff's Motion for Partial Summary Judgment

Thomas has filed a motion for partial summary judgment on the monies that Schwab claims are owed for services performed.  Thomas argues that the Michigan statute of limitations bars recovery, as the work for which payments were due occurred between 1995 and 1998, according to Schwab's deposition testimony.  Schwab Dep. at 145-147.  Schwab argues that because he continued to have a business relationship with Thomas and he continued to perform infrequent services for Thomas until 2008, his claim is not time barred.

Under Michigan law, the statute of limitations for breach of contract is six years.  Mich. Comp. Laws § 600.5807(8).  The general rule is that the period of limitations begins to run at the time the claim accrues, and accrual occurs at "the time the wrong upon which the claim is based was done," unless otherwise provided by statute.  Id. § 600.5827.  However, in the case of a "mutual and open account current," the claim accrues at the time of the last item proved in the account.  Id. § 600.5831; Payne v. Walker, 26 Mich. 60, 1872 WL 6017 at *2 (Mich. 1872).  The question here is whether the ongoing relationship between the parties constitutes a mutual and open account current.

> A mutual and open account current is established through a course of dealing where "each party furnishes credit to the other on the reliance that on settlement the accounts will be allowed, so that one will reduce the balance due on the other." 20 MICHIGAN LAW AND PRACTICE Statute of Limitations § 41. The essential elements of a mutual and open account current are that "there be

reciprocity of dealing, the items must not be all on one side, and there must be mutuality." Id.

Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc., No. 00-CV-70879-DT, 2001 WL 34089607 at *9 (E.D. Mich. Apr. 16, 2001).  Schwab testified that he received no payments after 1997. (Schwab Dep. at 39).  Accordingly, the business dealing was only one sided and the mutuality requirement is not satisfied.  Because the business arrangement does not receive the benefit of Mich. Comp. Laws § 600.5831, the standard six-year statute of limitations applies and partial summary judgment is warranted with respect to claims for unpaid monies older than six years. Accordingly, summary judgment is granted for all claims for money due before January 18, 2004, six years prior to the date Schwab filed his counterclaim (Dkt. 6).

### f. Sanctions

Both parties have filed for Rule 11 sanctions on the grounds that a portion of the opposing party's claims is barred by the statute of limitations, and that the opposing party knew or should have known that such claim, at least in part, is not viable.  Defendant further argues that Plaintiff's inventorship claim lacks proof and legal basis, and that Plaintiff has proffered no proof of any damages.  Under Rule 11, a party or attorney provides an implied certification that for every paper filed with the Court,

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

15

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(b). Rule 11 gives courts discretion to fashion sanctions to fit the circumstances of specific cases, taking into account the three justifications for invoking Rule 11 sanctions: punishment, compensation, and deterrence. 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1336.3, pp. 677-681 (3d ed. 2004). Parties have a "continuing responsibility to review and reevaluate [the] pleadings and where appropriate modify them to conform to Rule 11." Runfola & Associates, Inc. v. Spectrum Reporting II, Inc., 88 F.3d 368, 374 (6th Cir. 1996). "The test for the imposition of Rule 11 sanctions is whether the attorney's conduct was objectively reasonable under the circumstances." Nieves v. City of Cleveland, 153 F. App'x 349, 552 (6th Cir. 2005).

With respect to each party's argument regarding the statute of limitations, the Court has found, as discussed above, that Michigan statutes of limitations do bar a portion of each party's claims. Nevertheless, because portions of the claims are within the respective statutes, the untimeliness of claims is not, on the whole, egregious enough to support awarding sanctions.

Thomas's claim regarding inventorship is more troubling. Thomas and counsel have apparently failed to conduct a reasonable inquiry into the law and the facts of the case, as required by Rule 11(b), because his claim has no basis in either. Thomas claims inventorship in the '474 patent, but the closest he comes to supporting that claim is to argue for ownership in the '699 patent, a different patent. There is no evidence on the record of any inventive activity on the part of Thomas with respect to the patent in question. Thomas relies on the fact that he brought "the idea" of marketing automobiles with video to Schwab, and he argues that he provided the financing for the product, but he has not established any legal connection to the

16

patentable subject matter of the patent in question.  Indeed, there is no evidence in the record showing that Thomas has ever read the '474 patent or understands its content.

Rule 11(b)(2) requires that legal contentions must be warranted by existing law or make a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.  Rule 11(b)(3) requires that factual contentions have evidentiary support.  It is true that a pleading or motion may comply with Rule 11 even if the arguments contained within are rejected by the Court as long as they have a basis in law and have evidentiary support.  Hartleip v. McNeilab, Inc., 83 F.3d 767, 778 (6th Cir. 1996) ("The relevant inquiry is whether a specific filing was, if not successful, at least well founded.") (quoting Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 553 (1991)).  However, Thomas and his counsel have violated Rule 11 by making arguments that are simply not relevant to the legal issue of patent inventorship and by continuing to advance those arguments after discovery uncovered no evidentiary support for the contention that Thomas was entitled to be declared a co-inventor of the '474 patent.  Thus, as the Sixth Circuit said regarding a case in which it found that sanctions were warranted, "no reasonably prudent attorney, having performed even a modicum of investigation, would have filed those claims."  Nieves, 153 F. App'x at 553.

In responding to Schwab's motion for sanctions, Thomas relies on his response to Schwab's motion for summary judgment and avers that his arguments regarding inventorship are adequate.  Thomas's Resp. to Schwab's Mot. for Rule 11 Sanctions ¶ 4(b) (Dkt. 71).  As discussed above, they are not.  Thus, by violating Rule 11(b)(2) and 11(b)(3), Thomas and his counsel have exposed themselves to sanctions under Rule 11(c).  Rule 11(c) provides for appropriate sanctions against any attorney, law firm, or party, after notice and a reasonable opportunity to respond.  The parties and attorneys in this case have been given notice and an

17

opportunity to respond to the motions for sanctions.  The Court concludes that the failure to conduct a reasonable inquiry into the merits of the inventorship claim by Thomas and his counsel justifies an imposition of such sanctions.

What remains to be determined is the appropriate sanction.  Schwab shall serve and file a supplemental brief (not to exceed 10 pages exclusive of attachments) setting forth his argument on the appropriate sanction to be imposed.  If attorney fees and costs are requested, Schwab shall include an itemized statement of his expenses, including costs and attorney's fees, incurred in litigating the inventorship claim only.  Schwab's brief must be served and filed on or before January 6, 2012, or Schwab will be deemed to have waived any right to sanctions.  On or before January 27, 2012, Thomas and his counsel shall serve and file a responding supplemental brief (with the same page limitation).  Upon receipt of the supplemental briefing, the Court will determine the appropriate sanction with respect to Thomas and/or his counsel.

### g.  Attorney Ayad's Motion to Withdraw

On August 25, 2011, Thomas's counsel filed a motion to withdraw.  The Court held a hearing on the matter on October 12, 2011.  Both Thomas and the Ayad law firm agreed to the withdrawal.  Accordingly, the Court grants the motion.  While the Ayad firm is allowed to withdraw from representing Thomas, it and the attorneys who are withdrawing remain subject to the Court's jurisdiction pending the resolution of the matter of sanctions, as discussed above. Thomas will have until January 27, 2011 for new counsel to file an appearance.  If no appearance is filed, Thomas will be deemed to be proceeding pro se.

### IV. Conclusion

For the forgoing reasons, it is ordered as follows:

- Schwab's motion for summary judgment (Dkt. 49) is granted.

- Thomas's motion for partial summary judgment (Dkt. 63) is partially granted and partially denied, as follows: granted as to claims for breach of contract arising earlier than January 18, 2004, six years prior to Schwab's claim, and denied as to claims for breach of contract arising later than January 18, 2004.

- Schwab's motion for sanctions (Dkt. 67) is partially granted and partially denied, as follows: granted as to Thomas's inventorship claim, and denied as to Thomas's tortious interference with business relations claim; supplemental briefing on sanctions shall be served and filed in accordance with the schedule set forth above.

- Thomas's motion for sanctions (Dkt. 70) is denied.

- The Ayad motion to withdraw (Dkt. 78) is granted, but the firm and its attorneys remain subject to the Court's jurisdiction pending the resolution of the matter of sanctions. New counsel for Thomas must file an appearance by January 27, 2012, or Thomas will be deemed to be proceeding pro se.

- The joint final pretrial order in this matter shall be submitted on or before February 10, 2012. The final pretrial conference shall be conducted on February 27, 2012 at 1:30 p.m.  Bench trial will conducted on March 19, 2012 at 8:30 a.m.

SO ORDERED.


Dated:  December 16, 2011                    s/Mark A. Goldsmith
      Flint, Michigan                              MARK A. GOLDSMITH
                                      United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 16, 2011.

                                       s/Deborah J. Goltz
                                       DEBORAH J. GOLTZ
                                       Case Manager